STANLEY v. INDUSTRIAL COMMISSION et al.

No. 5266. Decided March 12, 1932. (8 P. [2d] 770.)

*Chris Mathison,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *Van Cott, Riter & Farnsworth,* of Salt Lake City, for defendants.

WOLFE, District Judge.

On December 29, 1930, Liston D. Stanley had a finger of his right hand injured while in the course of his employment by the Utah Metal & Tunnel Company, whose insurance coverage was with the state insurance fund. As a result, on the same day he had the finger amputated at the second phalanx. He died on July 2, 1931. It is claimed that the death resulted proximately from the injury. The widow, applicant for compensation, concluded and maintained at the hearing that ether had been administered; that it lit up a dormant tuberculosis condition from which Stanley died.

The evidence, uncontradicted, shows that Stanley, aged 26, was strong, able-bodied, and in good health before the

accident; that after the operation he slept poorly, gradually went down in weight, lost his robustness and strength, was short of breath, and grew progressively worse until he died. The commission denied compensation. During the hearing, the attorneys for the widow, the applicant, misled by her statement that Stanley complained much about the effects of ether supposedly administered as an anaesthetic and by a doctor's opinion based on the assumption that ether anaesthetic was administered, developed their client's case on the theory that latent tubercular germs were lit up by an ether anaesthetic. It transpired that not ether but sodium amytal and novocaine had been given.

The applicant applied for a rehearing on the ground that the case had proceeded on the wrong theory, and that therefore it had not been considered on its merits; that the merits of the case lay in the fact that the very injury and amputation itself had so decreased the resistance of Stanley that the latent tuberculosis germs made inroads and caused his death; that the very coincidence of the amputation and the beginning of the decline were comportable only with the conclusion that the accident caused the decline and consequently the death was caused by the accident.

Counsel for plaintiff cite numerous cases in which commissions and courts have held that as a matter of law the relation of cause and effect may be shown by a set of circumstances similar to the one in this case, to wit, apparent sound health, accident, followed by declining health and death due to tubercular infection lighting up. Counsel for defendants cite cases claiming to hold to the contrary. This case does not entail the necessity of deciding as to the law in that regard.

It may well be that, had the commission decided that the decedent suffered an accidental death, the award would have to stand under the evidence. The commission in deciding to the contrary held that,

"In view of the positive testimony of Dr. Richards that sodium amytal and a local are given in such cases instead of ether and that the reason for this practice is that ether is likely to result in compli-

cations in the condition of a patient who has worked for a considerable length of time in our metal mines and the further fact that the operation to be performed was not an extensive one, the Commission cannot find that the decedent herein died as a result of a latent tubercular condition which ante-dated his injury and which was lighted up at the time of the operation."

Plaintiff contends that the Commission's findings may be correct on the theory on which the case was tried, but it failed to consider the effect of the accident and the sleepless nights in decreasing the vitality of the decedent. While emphasis on the effect of the supposed anaesthetic tended to draw a herring across the trail, yet the record shows that the commission had the entire condition and the facts before it. Furthermore, on page 32 of the transcript, the examining commissioner asked:

"Q. Probably sometime prior to this injury. Assuming that to be a fact then what would you say as to the influence an injury of that kind would have by reason of lowering the man's resistance and aggravating and lighting up this pre-existent tuberculous condition? A. I can't see that it could have any association."

On page 33 the question was again repeated in another form:

"Q. Would you say that if this man had a latent tubercular condition which he apparently had, and had an injury of this sort where he has an amputation and some loss of blood, and perhaps shock by reason of the anaesthetic, that that would have any influence on the tuberculous condition? A. I don't see that it should have."

Counsel for plaintiff contend that this hypothetical question was not complete in that it did not include a call for the loss of sleep due to the shock from the amputation as a factor in lowering the resistance. But the question of the examining commissioner shows that the effect of the accident and amputation, independently of the effect of the supposed ether or the sodium amytal, on the latent tubercular infection, was before the commission. Furthermore, it would appear that any doctor in answering such hypothetical question would take into account as a matter of common

sense that there was some shock and loss of sleep, even though such element were not expressly contained in the question. On page 77 of the transcript the following colloquy was had:

"Attorney for Plaintiff: I think we would like—I think the law is pretty clear. It is a question of whether ether or sodium amytal was given.

"Attorney for Defendants: On the other hand I think it would not make a particle of difference whether ether was given or not."

It would seem therefore that the commission had pointed out to it the issue which counsel claims was ignored and that it did consider the merits of the case on this issue also. We are not prepared to say that, if it appears from the record that the commission ignores or fails to consider some tenable theory of the case upon which compensation might be granted, the court might not send it back for consideration of such issue or theory, provided the evidence was sufficient to demand that such a theory be considered. The rule that pertains to the courts to the effect that parties cannot try a case on one theory and then attempt to gain a reversal upon some other theory on appeal not advanced on the trial should probably not be applied as strictly to the commission, especially if the parties were honest and were not experimenting with the tribunal. The reasons that lie at the base of that rule as applied to the courts are not as potent as applied to the courts are not as potent as applied to the commission. It is its duty to determine whether the conditions precedent exist which entitle an applicant to payment. Consequently it has the duty to determine, regardless of theories advanced by counsel, whether the condition precedent exists. In case it clearly appears it has not performed that duty, this court would return the record for that purpose. In this case, we cannot say that the commission has not performed its duty in that respect.

From what has been said it follows that the commission did not err in refusing to grant a rehearing. It therefore becomes unnecessary to determine the question as to whether

this court has the power to review an order refusing to grant a rehearing.

The plaintiff assigns as a ground for nullifying the order that there was no evidence to sustain the commission's finding that the injury suffered by the deceased was not the proximate cause of his death. The burden in that regard is upon the plaintiff to prove that the injury proximately caused the death. Otherwise a negative finding is in order. The commission thought that the evidence to the effect that the injury caused the death was not sufficiently convincing. In the language used in the case of *Banks* v. *Industrial Commission,* 74 Utah 166, 278 P. 58, 59, "We are not called upon to decide whether it [the evidence] is sufficient to sustain an award, had one been made, but assuming that it is sufficient for such purpose it does not follow that the commission was bound to make an award."

Even if the coincidence of declining health, starting from injury in the face of good health before the injury, stood uncontradicted by any evidence, the commission would not be necessarily bound to find for the applicant, but, as noted above, there is actual evidence to the effect that the injury, the amputation, and the consequent shock had no relation to the death.

The order of the commission denying compensation is affirmed.

STRAUP, ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., being absent, did not participate herein.